UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AARON MICHAEL MURRAY,
    Plaintiff,

v.                                                    Case No. 5:21-cv-424-KKM-PRL

E.K. CARLTON, et al.,
    Defendants.
_____

## ORDER

Plaintiff Aaron Murray brings claims for First Amendment retaliation and Eighth Amendment deliberate indifference under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1). In his complaint, Murray names seven Defendants: the former warden of his correctional institution, three medical providers, a unit counselor, and two unknown corrections officers each identified as John/Jane Doe. (Doc. 1 at 2-3, 12-14.)[1] The named Defendants move to dismiss the First Amendment retaliation claims against Warden Carlton and Unit Counselor Michelle Cortopassi and the Eighth Amendment deliberate indifference claim against Warden Carlton. (*Id.*) The

---

[1] Despite the Court informing Murry "it is his responsibility to determine the identity" of the Doe Defendants (Doc. 6), he has yet to do so.

medical providers do not seek dismissal of the claims against them and have not filed an answer. Murray opposes the partial motion to dismiss. (Doc. 29.)

Because the Court declines to extend *Bivens* to this context, the Court dismisses the First Amendment retaliation claims. And because Murray fails to state a plausible deliberate indifference claim against Warden Carlton, the Court dismisses the Eighth Amendment claim against him. The Court also *sua sponte* dismisses the deliberate indifference claims against the two Doe Defendants.

## I. FACTUAL BACKGROUND

Murray, a federal inmate housed at Coleman Correctional Institution (Medium), alleges Warden Carlton and three medical providers—Jeannette Miranda, Linda Criswell, and Dr. Li—were deliberately indifferent to his serious medical needs, and Warden Carlton and Unit Counselor Cortopassi retaliated against him. (Doc. 1 at 3, 15-16, 38.) Murray alleges that he began experiencing abdominal pain on March 8, 2019. (*Id.* at 17.) After multiple, unsuccessful trips to the sick-call unit, Murray was transferred to a hospital on March 16, 2019, where he was diagnosed with gallstones and told "he would need surgery in the very near future." (*Id.* at 17-22.) The emergency room physician said Murray should take Hydrocodone until his surgery, but when Murray returned to the prison, Miranda prescribed only a three-day supply of the pain medication. (*Id.* at 22.)

Surgery was not immediately scheduled, but Miranda, Criswell, and Dr. Li denied Murray's requests for more pain medication, even though his pain caused a rise in blood pressure, potentially exacerbating his heart condition. (*Id.* at 23, 25, 27.) Miranda and Criswell prescribed blood pressure medication and over-the-counter pain killers, but Murray reported to them and others that the medications did not help and that his pain had worsened. (*Id.* at 23-25.)

Murray treated with a gastroenterologist on May 16, 2019, after spending two months in "excruciating pain without proper pain medication." (*Id.* at 28.) The specialist recommended immediate surgery. (*Id.* at 28-29.) Despite the recommendation, Murray did not have surgery for nearly seven months—on December 18, 2019. (*Id.* at 31.) Between May 16, 2019, and December 18, 2019, Murray received no prescription pain medication. (*Id.*) Murray alleges he lived with "excruciating pain" for nine months and, during all but five days of that nine months, Miranda and Criswell prescribed only over-the-counter medications, which were ineffective, and Dr. Li ignored his pleas for "effective pain management medication" and for surgery to be scheduled sooner. (*Id.* at 25.)

Murray alleges he wrote a grievance to Warden Carlton on August 29, 2019, reporting that "medical staff [was] deliberately indifferent to his serious medical needs and . . . acting unlawfully." (*Id.* at 29.) Warden Carlton did not respond, so Murray sent an

3

electronic request to Warden Carlton on September 19, 2019. (*Id.* at 30.) Warden Carlton responded to the electronic request but did not address "any of [Murray's] concerns." (*Id.*)

Murray names Cortopassi as a Defendant because, "as the Unit Counselor," Cortopassi was "[Murray's] only avenue to the Bureau of Prison's [(BOP's)] administrative remedy process," and, in that role, Cortopassi "was subjectively motivated to discipline [Murray] for exercising his First Amendment rights." (*Id.* at 16.) Murray states Cortopassi retaliated against him "in multiple ways," such as by "refus[ing] to allow him to continue his administrative remedy" process, possibly neglecting to return his BP-10 packet, and by failing to give Murray copies of responses to his grievance appeals. (*Id.* at 16, 30, 32-33.)

## II. ANALYSIS

### A. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal

conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### B. First Amendment Retaliation Under *Bivens*

A *Bivens* claim is an implied right of action for damages under the Constitution against a federal officer in his individual capacity who violates an individual's constitutional rights. *See Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court has created a *Bivens* remedy in only three circumstances: the Fourth Amendment (the circumstance arising in *Bivens* itself); the Due Process Clause of the Fifth Amendment for gender discrimination claims, *Davis v. Passman*, 442 U.S. 228 (1979); and the Eighth Amendment's Cruel and Unusual Punishment Clause for deliberate indifference claims, *Carlson v. Green*, 446 U.S. 14 (1980). *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (explaining the three narrow circumstances in which the Court has recognized "an implied damages remedy under the Constitution itself"). Despite the continued vitality of *Bivens* and its progeny, the Supreme Court has "changed course" and not recognized new implied damages remedies under the Constitution in decades. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020) (quoting *Ziglar*, 137 S. Ct. at 1855). And the Court has instructed

lower courts to exercise "caution before extending *Bivens* remedies into any new context." *Ziglar*, 137 S. Ct. at 1857. If a claim "presents a new *Bivens* context," or one that "diff[ers] in a meaningful way from previous *Bivens* cases," a court should consider whether "special factors" counsel hesitation before extending a damages remedy. *Id.* at 1859. *See also Hernandez*, 140 S. Ct. at 743.

Defendants argue Plaintiff's First Amendment claims should be dismissed because his claims differ "in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]," and special factors counsel against extending a damages remedy here. (Doc. 24 at 9, 12.) Murray argues the opposite. (*See generally* Doc. 29.)

The Court need not engage in the *Ziglar* two-step analysis here because "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022). Recently, the Supreme Court reversed the judgment of an appellate court, which had extended a *Bivens* remedy to a plaintiff's retaliation claim against a Border Patrol agent, reasoning that "the Judiciary is ill equipped" to extend a damages remedy for an alleged constitutional violation by a federal employee, "especially . . . when it comes to First Amendment claims." *Id.* at 1800, 1802, 1808-09. As it had done before, the Court stressed, "[i]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800.

6

As a result, *Egbert* forecloses Murray's First Amendment retaliation claims against Warden Carlton and Unit Counselor Cortopassi, which must be dismissed as not cognizable under *Bivens*. *See id.* at 1807.

## C. Deliberate Indifference

To state a *Bivens* claim for deliberate indifference to a serious medical need, a plaintiff must allege an objectively serious medical need and that a prison official acted with "deliberate indifference" to that serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). To demonstrate deliberate indifference, a plaintiff must show the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (alteration in original). *See also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (same); *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (same).[2]

---

[2] The Eleventh Circuit has not always articulated the third element consistently—the standard of culpability. For instance, some cases describe this element as requiring a showing of more than "mere negligence," *Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016), *abrogated on other grounds by*

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). This is so because "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." *Stone v. Hendry*, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Simply put, "mere misdiagnosis or subpar care, even if it rises to the level of medical malpractice, does not constitute deliberate indifference." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-cv-438-Oc-39PRL, 2015 WL 3454274, at *10 (M.D. Fla. May 29, 2015). Further, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotations omitted).

---

*Twombly*, 550 U.S. 544; *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999), while others describe this element as requiring a showing of more than "gross negligence," *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013); *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010); *Goebert*, 510 F.3d at 1327. That court has acknowledged this "tension within [its] precedent," noting that "[t]hese competing articulations—'gross' vs. 'mere' negligence—may well represent a distinction without a difference because . . . the Supreme Court itself has likened the deliberate-indifference standard to 'subjective *recklessness* as used in the criminal law.'" *Hoffer*, 973 F.3d at 1271 n.2 (citing *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994)); *see also Patel v. Lanier Cnty., Ga.*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020).

A defendant who holds a supervisory position may not be held liable under *Bivens* simply because a correctional institution staff member violated an inmate's constitutional rights. *Ziglar*, 137 S. Ct. at 1860 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable . . . for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."). However, if a plaintiff alleges that a supervisory official himself was deliberately indifferent, a *Bivens* claim may proceed against the supervisor. *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990).

Defendants do not dispute that Murray alleges he had a serious medical need. (*See* Doc. 24 at 16.) Rather, they argue Murray fails to state a plausible deliberate indifference claim against Warden Carlton because he is proceeding against Warden Carlton solely on a theory of vicarious liability. (*Id.* at 15.) Specifically, they note Warden Carlton did not participate in Murray's medical care, and Murray's allegation that he informed Warden Carlton his medical needs were not being met is insufficient to establish that Warden Carlton personally participated in a constitutional violation. (*Id.* at 15-16.) Murray disagrees, explaining "he specifically informed Warden Carlton that he was in serious pain" and was being denied pain medication against the advice of an emergency room doctor, yet Warden Carlton took no action. (Doc. 29 at 28-30.)

9

In his complaint, Murray alleges he complained to Warden Carlton in a grievance that he was dissatisfied with the prison medical staff, but Warden Carlton did not respond at first and, when Warden Carlton did respond, Murray found it insufficient. (Doc. 1 at 29.) Accepting these allegations as true, Murray fails to allege a plausible deliberate indifference claim against Warden Carlton, a non-medical provider. A failure to respond to an inmate's grievance or a failure to "answer" an inmate's concerns to the inmate's satisfaction cannot "fairly be characterized as *reckless*." *See Patel*, 969 F.3d at 1188 n.10 (emphasis in original). At most, such conduct suggests "inadvertence or error in good faith." *See Stone*, 785 F. App'x at 769.

Murray says in his response that he told Warden Carlton both in writing and in person that medical providers had been ignoring his serious pain, that his surgery was supposed to have been scheduled immediately but was not, that he had been denied pain medication, and that his heart condition was at risk of worsening, yet Warden Carlton "ignored each and every request." (Doc. 29 at 30-31.) Even if such facts, accepted as true, would be sufficient to state a plausible claim against Warden Carlton, Murray does not state these allegations in his complaint. "New allegations made in the response to the motion to dismiss cannot 'save' an insufficiently pleaded complaint from dismissal." *Osan v. Verizon Fla. LLC*, No. 8:15-cv-104-T-36TGW, 2015 WL 13749752, at *3 (M.D. Fla. Sept. 1, 2015).

As such, Murray's deliberate indifference claim against Warden Carlton must be dismissed as not plausible.

### D. Claims Against Doe Defendants

Under 28 U.S.C. § 1915A(a), federal courts must conduct an initial screening of civil suits brought by prisoners seeking redress from a governmental entity or its employee to determine whether they should proceed. Upon review, a court is required to dismiss a complaint (or any portion thereof) that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted" (internal numbering omitted)). A complaint is frivolous if it is without arguable merit either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Fed. R. Civ. P. 12(b)(6).").

Under the above standards, Murray's claims against the two Doe Defendants, who have not yet been identified or served, cannot survive. Murray alleges both Doe Defendants

11

worked in the sick-call unit at the relevant times, but he does not identify them as medical providers. (Doc. 1 at 17-19.) Murray encountered the Doe Defendants on different days when his abdominal pain first started but before he was diagnosed with an illness necessitating surgery. (*Id.*) On March 11, 2019, Murray went to sick call complaining about "abdominal pain and swelling of the abdominal region." (*Id.* at 17.) After Murray completed a sick-call request, Doe Defendant #1 told Murray to return to his housing unit and that he would be called back later in the day. (*Id.*) Murray alleges "he was never called back." (*Id.*)

Murray returned the following day, March 12, 2019, and filled out another sick-call request. (*Id.* at 17-18.) Doe Defendant #1 again told Murray to return to his housing unit and that he would be called back later in the day. (*Id.* at 18.) Again, though, Murray was not called back. (*Id.*) On March 13, 2019, Murray notified a correctional officer (CO) that he was in severe pain and needed to be seen in sick call. (*Id.*) The CO sent Murray to sick call, where he encountered Doe Defendant #2, who told him sick call was closed and he would have to return the next day. (*Id.*) Murray alleges he told Doe Defendant #2 his pain was so severe that he would go to the emergency room if he had not been incarcerated, yet Doe Defendant #2 "told [Murray], without examining him, that his condition was not an emergency" and that he should drink water and take aspirin. (*Id.* at 19.) Murray says Doe Defendant #2 was not qualified to assess his medical condition or decide whether his

12

condition warranted immediate treatment. (*Id.*) Additionally, Murray alleges Doe Defendant #2 told Murray he should not have complained about his medical condition to a CO. (*Id.* at 18.) Murray asserts no other allegations against the Doe Defendants. (*See generally id.*)

The deliberate indifference standard requires a plaintiff to allege facts that make it plausible that the defendant knew of a serious risk of harm but disregarded that risk by conduct that is more than gross negligence. *See Townsend*, 601 F.3d at 1158. The Eleventh Circuit has routinely underscored that this standard "is far more onerous than normal tort-based standards of conduct sounding in negligence, and is in fact akin to subjective recklessness as used in the criminal law." *Hoffer*, 973 F.3d at 1271 (quotations omitted); *see also Patel*, 969 F.3d at 1188 n.10 ("[N]o matter how serious the negligence, conduct that can't fairly be characterized as *reckless* won't meet the Supreme Court's standard." (emphasis in original)). In the prison context, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotations omitted). Stated another way, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

13

Amendment." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Estelle*, 429 U.S. at 106).

Murray fails to allege facts to support an Eighth Amendment claim against the Doe Defendants. As to Doe Defendant #1, Murray merely alleges the unknown staff member instructed him to return to his housing unit until someone in the sick-call unit could evaluate him. (Doc. 1 at 17.) Murray contends he was not "called back," but he does not say Doe Defendant #1 was responsible for the oversight. Even so, that Murray was never called back to the sick-call unit suggests at most negligence.

As to Doe Defendant #2, Murray's claim lacks specific facts that would allow the Court to draw a reasonable inference this individual was deliberately indifferent to a serious medical need. Accepting as true that Murray told Doe Defendant #2 he was in such severe pain that he would have gone to the emergency room had he not been incarcerated, Murray does not allege Doe Defendant #2 was a medical provider or could have provided medical care for him. In fact, Murray alleges facts suggesting Doe Defendant #2 was not a medical provider. (*Id.* at 13, 18-19.) He alleges, "[Doe Defendant] #2 made a medical call that she was not trained to make and she was not qualified to determine any treatment or decide . . . whether [Murray] should have been seen right away." (*Id.*) Murray's subjective belief that he should have seen a medical provider "right away" does not permit the reasonable inference that Doe Defendant #2 had subjective knowledge of a serious medical need that,

14

"if left unattended, [would pose] a substantial risk of serious harm" to Murray. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting in part *Farmer*, 511 U.S. at 834).

Even had Murray expressed that he believed he was suffering a life-threatening illness, such as appendicitis, the Doe Defendant #2's failure to appreciate the gravity of Murray's medical condition does not suggest deliberate indifference. *See Farmer*, 511 U.S. at 826 ("[T]he failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment."). Any such failure would amount to negligence. Finally, even if true that Doe Defendant #2 was unkind or chastised Murray for complaining to a CO about his pain, that does not satisfy the stringent deliberate indifference standard. *See Bismark*, 213 F. App'x at 897 ("[I]t is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required." (citing *Harris*, 941 F.2d at 1505)).

For these reasons, Murray fails to state a plausible *Bivens* claim under the Eighth Amendment against the Doe Defendants and the claims against them are dismissed.

### III. Conclusion

For the foregoing reasons, the following is **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 24) is **GRANTED**. Murray's First Amendment retaliation claims against Warden Carlton and Unit Counselor

Cortopassi and his Eighth Amendment deliberate indifference claim against Warden Carlton are **dismissed**.

2. Defendants Miranda, Criswell, and Dr. Li must answer the complaint (Doc. 1) no later than **January 13, 2023**.

3. Murray's deliberate indifference claims against the two Doe Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

4. The Court directs the **Clerk** to terminate Warden Carlton, Unit Counselor Cortopassi, and the Doe Defendants as parties to this action.

**ORDERED** in Ocala, Florida on December 27, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge