UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AARON MICHAEL MURRAY,
    Plaintiff,

v.                                        Case No. 5:21-cv-424-KKM-PRL

E.K. CARLTON, et al.,
    Defendants.
_____

## ORDER

Plaintiff Aaron Murray brings a claim of Eighth Amendment deliberate indifference under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against seven defendants in their individual capacities: the former warden of the federal correctional institution where he is incarcerated, three named medical providers, two unnamed medical providers, and a unit counselor. Prior orders set forth the legal principles governing Murray's claims, identified the claims' deficiencies, dismissed the claims, and granted Murray leave to amend. (Docs. 34 and 37.) Murray now proceeds on his Amended Complaint. (Doc. 40.)

Defendant E.K. Carlton, Warden of Federal Correctional Institute Coleman Medium ("FCC Coleman"), moves to dismiss the deliberate indifference claim asserted against him. (Doc. 42.) Murray opposes the motion to dismiss. (Doc. 43.) Medical providers Richard Qi Li and Jeannette Miranda and Unit Counselor Michelle Cortopassi answered the Amended Complaint. (Doc. 41.) Medical provider Linda Criswell and the two unnamed medical providers, identified as

1

Jane Doe #1 and Jane Doe #2, have not filed a pleading responsive to the Amended Complaint.

Because Murray fails to state a plausible deliberate indifference claim against Warden Carlton, the Court dismisses the claim against him with prejudice. Also, the Court sua sponte dismisses the deliberate indifference claim against both Jane Doe #1 and Jane Doe #2. Finally, the district court orders Defendant Criswell to respond to the Amended Complaint.

I.     **Amended Complaint**

Murray began experiencing abdominal pain on March 8, 2019, and attempted self-treatment, but the pain worsened. (Doc. 40 at 9.) He sought treatment at FCC Coleman's Health Services Department each day from March 11, 2019, to March 15, 2019, but was denied or provided inadequate care. (*Id*. at 9–12.)

On March 16, 2019, Murray was transferred to a hospital where he was diagnosed with gallstones and told "he would need surgery in the very near future." (*Id*. at 12.) The emergency room physician prescribed hydrocodone for pain management, to be taken every six hours until surgery. (*Id*. at 13.) However, when Murry returned to FCC Coleman, surgery was not immediately scheduled, and Miranda prescribed only a three-day supply of the pain medication. (*Id*. at 14.)

Murray received his pain medication until the prescription ran out on March 20, 2019, at which point his abdominal pain, high blood pressure, and additional symptoms returned. (*Id*.) He sought treatment at the Health Services Department multiple times per week in March and April of 2019. (*Id*. at 14–15.) Miranda and Criswell prescribed blood pressure medication and over-the-counter pain killers,

but Murray reported to them and to others that the medications did not help and that his severe pain continued. (*Id*. at 15.)

On May 1, 2019, Murray sent both Dr. Li and Warden Carlton an Inmate Request to Staff in which he reported that he was being treated with deliberate indifference but they ignored his complaint. (*Id*. at 15.) On May 9, 2019, he filed a formal grievance in which he reported that he continued to experience severe pain. (*Id*. at 15–16.) Unit Counselor Cortopassi reviewed the grievance and called the new Health Services supervisor who, after reviewing Murray's medical records, promised that Murray would be scheduled for a consultation with an outside specialist. (*Id*. at 16.)

On May 16, 2019, Murray was treated by a gastroenterologist who ordered both a laparoscopic cholecystectomy to remove his gallbladder and gallstones and a biopsy of his surrounding, inflamed organs. (*Id*.) The gastroenterologist told Murray that he would recommend to the prison that his surgery "be moved to the top of the list, as the pain and high blood pressure could negatively affect his heart condition." (*Id*.) On June 26, 2019, Murray received an echocardiogram of his heart. (*Id*.)

In June, July, and August 2019, Murray continued to experience severe pain but his complaints and requests for adequate pain medication were ignored. (*Id*. at 16–17.) On July 22, 2019, Murray sent both Dr. Li and Warden Carlton an Inmate Request to Staff in which he repeated that he was being treated with deliberated indifference. (*Id*. at 16.) On August 5, 2019, he sent both Dr. Li and Warden Carlton a "simple reminder letter," notifying them "that he was in severe pain, that his serious medical condition was diagnosed by a physician, and that he was being

3

treated with deliberate indifference." (*Id*. at 16–17.) On August 29, 2019, he wrote a grievance to Warden Carlton, complaining that his serious medical needs were being ignored. (*Id*. at 17.) Warden Carlton did not respond timely to the grievance. (*Id*.)

On September 19, 2019, Murray sent Warden Carlton "a personal electronic request" and "explained his entire situation[.]" (*Id*.) Later that day, Murray "personally spoke to Warden Carlton at mainline[.]" (*Id*.) Warden Carlton eventually responded to Murray's grievance but the response was "for informational purposes only" and neglected to address his concerns. (*Id*.)

In October 2019, Murray sent multiple requests for help to Dr. Li and the medical provider defendants, all of which were ignored. (*Id*. at 18.) On October 7, 2019, he sent an electronic request to Dr. Li and the medical provider defendants, complaining that his condition had worsened and requesting help. (*Id*.) On October 9, 2019, he forwarded his request dated October 7, 2019, to Warden Carlton. (*Id*.) On October 11, 2019, Warden Carlton responded by "blowing off" Murray's concerns and "telling him to speak with the Associate Warden." (*Id*.)

In November 2019, Murray sent numerous requests to the medical provider defendants, all of which were ignored. (*Id*.) Murray continued to experience daily pain and suffering for over nine months until finally, on December 18, 2019, he received the recommended surgery to remove his gallbladder and gallstones. (*Id*. at 18.)

### III. Analysis

    **A.**     **Deliberate Indifference Claim against Warden Carlton**

4

In its order granting the Motion to Dismiss the original Complaint, the Court explained the legal standards governing a motion to dismiss a *Bivens* claim for deliberate indifference to a serious medical need.[1] (Doc. 34 at 4 and 7–9.) With those legal standards in mind, the Court concludes that Murray again fails to state a plausible claim for deliberate indifference against Warden Carlton.

In his motion, Warden Carlton argues that Murray alleges insufficient facts to establish supervisory liability. (Doc. 42 at 8–9.) Murray does not allege that Warden Carlton personally participated in his medical care. (*Id*. at 8.) And, the allegation that he did not respond adequately to Murray's complaints is insufficient to show that he had the requisite culpable state of mind for deliberate indifference. (*Id*. at 8–10.) Warden Carlton urges the Court to consider his written response to Murray's complaints dated September 19, 2019, which shows that he both responded to the complaints and explained the basis for his response. (*Id*. at 5 and 9.)

In his response to the motion, Murray presses inconsistent positions. First, he asserts that he "does not, nor has he ever alleged that the Warden's failure to properly respond to his administrative remedy amounts to deliberate indifference." (Doc. 43 at 2.) Later, he presents the opposite position, arguing that "Warden Carlton was informed sufficiently to give him notice of [Murray's] deliberate indifference claim and his failure to take sufficient action to ensure [Murray] received proper health care is the cause of the violation." (*Id*. at 6.) He

---

[1] The Court observed that "[t]he Eleventh Circuit has not always articulated the third element [of a deliberate indifference claim] consistently–the standard of culpability." (Doc. 34 at 7, n.2.) The Eleventh Circuit has since resolved that inconsistency by instructing that an Eighth Amendment deliberate indifference claim requires a showing that a defendant "acted with more than *gross* negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis in original).

5

argues that his "numerous verbal, written, and electronic communications to Warden Carlton can support liability because" those communications "gave [Warden Carlton] sufficient notice to alert him to a violation of law." (*Id*. at 5.)

In the Amended Complaint, Murray alleges that he complained to Warden Carlton at least five times: (1) on May 1, 2019, in an Inmate Request to Staff; (2) on July 22, 2019, in an Inmate Request to Staff; (3) on August, 5, 2019, in a reminder letter; (4) on September 19, 2019, in a personal electronic request to staff; and, (5) on October 9, 2019, in a forwarded electronic request to staff. (Doc. 40 at 15–18.) Also, he alleges he spoke to Warden Carlton on September 19, 2019, although he does not describe their conversation. (*Id*. at 17.) He alleges that Warden Carlton eventually responded on September 19, 2019, but the response was "for informational purposes only" and neglected to address his concerns. (*Id*.)

The Court can consider Warden Carlton's allegedly inadequate response, which is included with his Motion to Dismiss, because it is central to Murray's deliberate indifference claim. *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). In his response dated September 19, 2019, Warden Carlton wrote the following (Doc. 42 at 5):

> This is in response to your Request for Administrative Remedy [received] on August 19, 2019[,] [i]n which you allege you are not receiving medical care and believe [medical staff are deliberate[ly] indifferen[t] to your medical conditions and

6

medical staff will not meet with you. Furthermore, you have multiple requests to include requesting pain medication, echocardiogram, copy of your medical records and surgery.

An investigation into this matter was conducted and revealed you were seen on March 14, 2019, for a sick call complaint of right side upper abdominal pain. The Advance Registered Nurse Practitioner (ARNP) examined you. During the evaluation, you denied any nausea or vomiting and you were without a fever. The ARNP obtained a urinary analysis and consulted with the medical doctor. You were advised to increase your fluids based on your urine test results. You were instructed to return in the evening or next morning if symptoms worsen. On March 15, 2019, you were re-evaluated by the Physician Assistant (PA). During the exam, the PA notated you did not appear to be in pain and you denied any nausea or vomiting. An x-ray was ordered and completed on the same day. X-ray results showed calcified stones in right lower pelvis that could represent urinary calculi, which are tiny urine stones that can pass with increasing fluid intake.

On March 16, 2019, you were seen by the Emergency Medical Technician (EMT) for increase in abdominal pain. Based on your exam and previous treatment it did not improve your symptoms, the EMT transferred you to the emergency room for further evaluation. You returned back the same day and were seen in the morning on March 17, 2019. The ARNP notated you reported feeling better. At the hospital, you were diagnosed with Cholelithiasis, which are gallstones. The ARNP placed the requested consult for evaluation with general surgery. You were seen by the general surgeon on May 16, 2019. After the general surgeon consultation report was sent to the institution, it was reviewed by the medical doctor and a consult for surgery was written. As with all elective surgery, the region has to review for approval and the request for surgery was approved and is pending scheduling. Since your evaluation with the general surgeon, you have not reported back to sick call in regards to complaints of pain. If you experience pain, you should report to sick call.

> In this remedy, you made several requests. You allege staff will not meet with you; however, a review of your records found staff followed up with you and you were seen by the general surgeon in May and have not reported back to medical for any additional concerns. You have requested surgery for your gall stones and that has been approved. Due to security reasons, you will not be informed of the schedule date. In regards to your request for medical records, you need to report to medical records open house on Thursday, at 12:30 pm, with a [copy] of which records you are requesting.
>
> Therefore, your request for Administrative Remedy is Information Purposes Only.

Accepting Murray's allegations as true, they are insufficient to state a plausible deliberate indifference claim against Warden Carlton because his comprehensive written response to Murray's complaints does not permit the conclusion that he "disregarded [a known] risk" with conduct that is "more than *gross* negligence." *Wade*, 67 F.4th at 1374 (emphasis in original). "Conduct that is more than grossly negligent includes: '(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all.'" *James v. Robinson*, No. 22-11301, 2023 WL 4399985, at *2 (11th Cir. July 7, 2023) (quoting *Bingham v. Thomas*, 654, F.3d 1171, 1175 (11th Cir. 2011)). The written response shows that, once Warden Carlton received Murray's complaints, he responded by investigating Murray's medical care at the prison. He summarized the medical care Murray received, including exams by medical professionals, a urinalysis, an x-ray, a transfer to the emergency room, and a consultation with a general surgeon. He confirmed that surgery had been approved, and he instructed Murray on obtaining his medical records. This response does not satisfy the "high standard" of more than gross

8

negligence. *See Wade*, 67 F.4th at 1376 (explaining that deliberate indifference "typically involve[s] egregious circumstances, often involving prison officials denying inmates medication for no reason at all"). Murray's opinion that Warden Carlton's response was inadequate, and his disagreement with the course of treatment, are insufficient to show that Warden Carlton's response amounted to more than gross negligence. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support an [Eighth Amendment deliberate indifference claim].").

After the Court explained the relevant law, Murray had an opportunity to amend his allegations to state a deliberate indifference claim against Warden Carlton, but he failed to do so. Therefore, this claim is dismissed with prejudice. *See Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

**B.    Deliberate Indifference Claim against Jane Doe #1 and Jane Doe #2**

In its prior order, the Court explained the legal standard it applies to screen civil suits brought by prisoners seeking redress from a governmental entity under 28 U.S.C. § 1915(A). (Doc. 34 at 11.) The Court dismissed Murray's deliberate indifference claims against the two unnamed defendants after identifying several deficiencies in those claims, including that Murray neglected to identify them as medical providers. (*Id*. at 11–15.) The claim against Doe Defendant #1 was dismissed because the claim "suggests at most negligence." (*Id*. at 14.) The claim

9

against Doe Defendant #2 was dismissed because Murray failed to allege "that Doe Defendant #2 had subjective knowledge of [his] serious medical need" and because the alleged conduct amounted to mere negligence. (*Id.* at 14–15.)

Despite having an opportunity to amend his claims, Murray again alleges insufficient facts in his Amended Complaint to state a plausible deliberate indifference claim against the unnamed defendants. Murray now describes both unnamed defendants as nurses and identifies them as Jane Doe #1 and Jane Doe #2. (Doc. 40 at 5.) However, besides describing the unnamed defendants as nurses, the factual allegations remain mostly unchanged from the original Complaint.

In the Amended Complaint, Murray alleges that Jane Doe #1 was "effectively a gatekeeper . . . responsible for controlling access to the back of Health Services." (*Id.* at 10.) He alleges that, on May 11, 2019, he went to Health Services Department (i.e., the sick call unit), complaining of severe abdominal pain and swelling. (*Id.* at 9–10.) Jane Doe #1 instructed him to return to his housing unit, stated that she would call him back later in the day, and neglected to do so. (*Id.* at 10.) On March 12, 2019, Murray returned to the sick call unit with extreme pain, but Jane Doe #1 instructed him to return to his housing unit. (*Id.*) Again, she assured him that she would call him back, but neglected to do so. (*Id.*) On March 14, 2019, Murray returned to the sick call unit and notified Jane Doe #1 that "it was an emergency, but she blew him off." (*Id.* at 11.)

Accepting these allegations against Jane Doe #1 as true, they are insufficient to state a plausible deliberate indifference claim. Murray merely alleges that on three occasions, Jane Doe #1, who is a nurse, neglected to call him back to the sick-call unit after instructing him to return to his housing unit without a medical

10

evaluation. His allegations that he complained to Jane Doe #1 that he was experiencing severe pain and that "it was emergency" are insufficient to show that Jane Doe #1 had "subjective knowledge of a risk of serious harm" if left unattended. *See Wade*, 67 F.4th at 1374. Furthermore, the allegation that Jane Doe #1 neglected to call him back to the sick call unit alleges—at most—negligence. *See Harris*, 941 F.2d at 1505 ("Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.").

Regarding Jane Doe #2, Murray alleges in the Amended Complaint that she was "a nurse who routinely worked as a gatekeeper to treatment." (Doc. 40 at 10.) He arrived at the sick-call unit on March 13, 2019, experiencing a "serious medical need" that was "obvious to even a lay observer." (*Id*. at 10–11.) Jane Doe #2 began "chastising" him for complaining, refused to evaluate him, stated that there was "no emergency," and instructed him to drink a lot of water and to return to his unit. (*Id*.) On March 15, 2019, Murray returned to the sick call unit because "the pain was spreading, and it began to hurt him to breathe." (*Id*. at 11.) Jane Doe #2 instructed him to return to his housing unit, but he remained until he was seen by Defendant Criswell. (*Id*. at 11–12.)

Accepting these allegations against Jane Doe #2 as true, they are insufficient to state a plausible deliberate indifference claim. Although Murray alleges that his serious medical need was "obvious to even a lay observer," he neglects to support this general allegation with any factual details to show that Jane Doe #2 subjectively knew he was experiencing a serious medical need that "if left unattended, [would pose] a substantial risk of serious harm" to Murray. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotation omitted). Furthermore,

11

the allegation that Jane Doe #2 refused to evaluate him and instructed him to drink water and return to his housing unit suggests negligence in failing to diagnose the severity of his condition. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Finally, the allegation that Jane Doe #2 chastised Murray for complaining does not amount to more than gross negligence. *See Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("[I]t is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required.").

Murray had an opportunity to amend his allegations to state a deliberate indifference claim against Jane Doe #1 and Jane Doe #2 under the law set forth in the Court's prior order but failed to do so. Therefore, these claims are dismissed with prejudice. *See Woldeab*, 885 F.3d at 1291.

### C. Service of Process on Defendant Linda Criswell

A prior order directed the United States Marshal to serve the named defendants, including Linda Criswell, by certified mail. (Doc. 15.) The Marshal returned proof of service of process on Defendants Carlton, Cortopassi, Li, and Miranda. (Docs. 19–22.) The proof of service of process on Defendant Criswell, however, was returned unexecuted with the remark, "No longer works at Coleman, attorney has no forwarding address." (Doc. 23. Because service of process by certified mail on Defendant Criswell was returned unexecuted, the United States Marshal shall proceed with personal service on Defendant Criswell.

### IV. Conclusion

For the foregoing reasons, the following is **ORDERED**:

1. Defendant Carlton's Motion to Dismiss (Doc. 42) is **GRANTED**. Murray's Eighth Amendment deliberate indifference claim against Warden Carlton is **DISMISSED WITH PREJUDICE**.

2. Murray's deliberate indifference claims against both Jane Doe #1 and Jane Doe #2 are **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

3. The United States Marshal shall proceed with **PERSONAL SERVICE** on Defendant Criswell as follows:

   a. The Clerk must issue a summons for Defendant Criswell.

   b. Not later than **THIRTY DAYS** from the date of this order, the United States Marshal shall serve, by personal service, a copy of the Amended Complaint and summons upon Defendant Criswell. As *Richardson v. Johnson*, 598 F.3d 734, 739–40 (11th Cir. 2010), instructs, the United States Marshal should use "reasonable efforts" to locate and serve Defendant Criswell if Murray has provided enough information to do so.

   c. Within **THIRTY DAYS** after effecting personal service, the United States Marshal shall file the return of service. If personal service is not successful, the United States shall file a report, along with the return of service, that details the reasonable efforts used to attempt to locate and serve Defendant Criswell. A defendant who is personally served has **TWENTY-ONE DAYS** from the date of

service of process to answer or otherwise respond to the Amended Complaint.

**DONE and ORDERED** in Tampa, Florida on July 31, 2023.

*/s/ Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge